■ In the Matter of DEMETRIUS SAMADJOPOULOS, Appellant, v NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM et al., Respondents. [961 NYS2d 410]—

Judgment, Supreme Court, New York County (Martin Schoenfeld, J.), entered January 26, 2011, denying the petition and dismissing the proceeding brought pursuant to CPLR article 78 to annul a determination of respondent Trustees of New York City Employees' Retirement System (NYCERS), dated December 11, 2009, which denied petitioner's application for World Trade Center (WTC) disability benefits, unanimously reversed, on the law, without costs, the petition granted to the extent of annulling the determination, and the matter remanded for further proceedings in accordance with this decision. Appeal from order, same court and Justice, entered January 26, 2011, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Administrative Code of the City of New York § 13-252 provides that a police pension fund member who is physically or mentally incapacitated for the performance of service as a proximate result of such service shall be retired on an accident disability retirement (ADR) pension. The WTC Law (Administrative Code § 13-252.1) amended this provision to address cases involving WTC injuries. The WTC Law established a presumption that "any condition or impairment of health . . . caused by a qualifying World Trade Center condition" as defined in the Retirement and Social Security Law, "shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident . . . unless the contrary be proved by competent evidence" (§ 13-252.1 [1] [a]). "Qualifying World Trade Center condition" is defined as, inter alia, "a qualifying condition or impairment of health" (Retirement and Social Security Law § 2 [36] [a]), which in turn is defined as, inter alia, a qualifying physical condition, or a

qualifying psychological condition, or both (§ 2 [36] [b]). "Qualifying physical condition" is defined to include, inter alia, "diseases of the upper respiratory tract," "diseases of the lower respiratory tract, including but not limited to . . . asthma [and] reactive airway dysfunction syndrome," and "diseases of the gastroesophageal tract, including . . . reflux disease" (§ 2 [36] [c]). "Qualifying psychological condition[s]" include post-traumatic stress disorder, anxiety, and/or depression (§ 2 [36] [d]).

Petitioner demonstrated that he was incapacitated for the performance of service as a proximate result of his WTC line-of-duty toxic exposure injuries. The evidence showed that petitioner developed disabling asthma, respiratory airway dysfunction, and gastroesophageal reflux disease (GERD) in the wake of his WTC exposure, all of which are defined as WTC "[q]ualifying physical condition[s]." He also suffers from post-traumatic stress disorder, anxiety, and/or depression—"[q]ualifying psychological condition[s]."

Once a petitioner establishes that he worked the requisite number of hours at the site, the "World Trade Center presumption" places the burden on the respondents to show that the petitioner's qualifying injury was not incurred in the line of duty (*see Matter of Maldonado v Kelly*, 86 AD3d 516, 519 [1st Dept 2011], *revd on other grounds sub nom. Matter of Bitchatchi v Board of Trustees of the N.Y. City Police Dept. Pension Fund, Art. II*, 20 NY3d 268 [2012]). If a determination is made, even postretirement, that the applicant is disabled by a qualifying WTC condition, it will be presumed, unless rebutted, that the disability was sustained due to a work-related accident, thus entitling the applicant to Retirement and Social Security Law § 605 (h) disability retirement benefits.

Although the WTC presumption does not mandate enhanced ADR retirement benefits for first responders in all cases, it is nonetheless incumbent on respondents to come forward initially with affirmative credible evidence to disprove that the officer's disability was causally related to his work at the WTC site (*see Matter of McAuley v Kelly*, 103 AD3d 449, 451 [1st Dept 2013]). The Board may not deny benefits solely by relying on the lack of evidence connecting the disability to the exposure, or by "rely[ing] on petitioner's deficiencies to fill its own gap in proof" (*Matter of Bitchatchi*, 20 NY3d at 284).

Respondents have utterly failed to rebut the presumption that petitioner's qualifying conditions were not caused by hazards encountered at the WTC site. Respondents do not even purport to offer an alternative cause for petitioner's debilitating

conditions (*compare Matter of Dement v Kelly*, 97 AD3d 223, 230 [1st Dept 2012] [respondents did not sufficiently rebut presumption that petitioner's sleep apnea was caused by WTC exposure by supposed proof, inter alia, that apnea was not linked to GERD, from which petitioner did suffer], *and Bitchatchi*, 20 NY3d at 282 [respondents did not sufficiently rebut presumption that petitioner's cancer was attributable to WTC exposure by supposed proof that her cancer was linked to a prior ulcerative colitis condition]). Indeed, the record contains no proof whatsoever that petitioner's disabling conditions were attributable to any other cause.

No fewer than four doctors from the WTC Medical Monitoring and Treatment Program (MMTP) found—and not one doctor disputed—that petitioner suffers from reactive airway disease and/or asthma as well as reflux, and another MMTP doctor, as well as the City's own doctor, found that petitioner also suffers from depression and anxiety. The fact that petitioner's spirometer incentive tests and chest X rays—taken in a physician's office and not a work environment which aggravates his symptoms—were normal does not negate the causal connection between his work at the WTC site and his injuries. MMTP physicians explained that normal results on these tests in an office environment are not only consistent with petitioner's diagnosis, but expected. Respondents cannot point to one physician who opined that a lack of symptoms in a physician's office or normal spirometry results undermines petitioner's diagnosis. While medical boards may resolve conflicting evidence, they may not simply ignore medical evidence, particularly here, where the Medical Board must rebut a statutory presumption.

Petitioner's respiratory and psychological conditions did not exist prior to his work at the WTC site. The City does not—and cannot—dispute this. The causal connection between his physical and psychological conditions is buttressed by the reports of not only MMTP doctors but also by the City's own doctors.

Respondents are reduced to arguing that the WTC presumption does not apply because petitioner's four enumerated WTC conditions are not "disabling." We reject this cynical attempt to circumvent the clear intent of the statute. Petitioner is entitled to have his previously established disability reclassified to include his WTC-related conditions. In any event, respondents' assertion that petitioner is not "disabled" is itself irrational and arbitrary. Respondents admit that petitioner suffers from several qualifying conditions, yet state—without any medical evidence to rebut the conclusion that the conditions are disabling—that no disability exists.

Accordingly, because the record contains no affirmative credible evidence supporting the determination that petitioner's qualifying conditions were not incurred in the line of duty, we reverse, and hold that petitioner is entitled to ADR benefits pursuant to the WTC presumption, which respondents have failed to rebut. Concur—Mazzarelli, J.P., Saxe, Degrasse, Manzanet-Daniels and Clark, JJ. **[Prior Case History: 2011 NY Slip Op 30176(U).]**